**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-02326-RM-MEH

SANDRA SCHISSLER, KARLY SISSEL, and
DERRICK HITTSON,
individually and as a representative of a class of similarly
situated persons, and on behalf of the Janus 401(k) and
Employee Stock Ownership Plan,

      Plaintiffs,

v.

JANUS HENDERSON US (HOLDINGS) INC.,
JANUS HENDERSON ADVISORY COMMITTEE, and
JOHN and JANE DOES 1-30,

      Defendants.

---

**AMENDED CLASS ACTION COMPLAINT**

---

**<u>NATURE OF THE ACTION</u>**

1.      Plaintiffs Sandy Schissler, Karly Sissel, and Derrick Hittson individually and as a representatives of the Class described below, and on behalf of the Janus 401(k) and Employee Stock Ownership Plan ("Plan"), bring this action under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"), against Defendants Janus Henderson US (Holdings) Inc. ("Janus Henderson"), the Janus Henderson Advisory Committee ("Committee"), and John and Jane Does 1-30 ("Doe Defendants") (collectively, "Defendants"). At the expense of the Plan and its participants and beneficiaries, Defendants breached their fiduciary duties with respect to the Plan in violation of ERISA. Defendants applied a disloyal and

1

imprudent preference for Janus Henderson proprietary funds within the Plan ("Janus Henderson

Funds"), despite their poor performance and high costs. Defendants' disloyalty and imprudence

has cost plan participants millions of dollars over the putative class period.[1] Plaintiffs bring this

action to remedy this unlawful conduct, recover losses to the Plan, and obtain other appropriate

relief as provided by ERISA.

## PRELIMINARY STATEMENT

2.      As of September 2022, Americans had invested approximately $8.9 trillion in

defined contribution plans (401(k) and 403(b) plans).[2] Defined contribution plans have largely

replaced defined benefit plans (pension plans), which were predominant in previous generations.[3]

3.      Defined contribution plans provide greater potential for disloyalty and imprudence

than defined benefit plans. In a defined benefit plan, each participant is entitled to a "fixed periodic

payment." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999) (quotation omitted). As the

employer must ensure the plan is sufficiently capitalized to make these payments, the employer

bears all risks related to excessive fees and investment underperformance. *See id.* 439–40.

Consequently, defined-benefit-plan employers and fiduciaries have every incentive to keep costs

low and remove imprudent investments. But in a defined contribution plan, participants' benefits

"are limited to the value of their own investment accounts, which is determined by the market

performance of employee and employer contributions, less expenses." *Tibble v. Edison Int'l*, 135

---

[1] The putative class period is "any time on or after September 9, 2016." *Infra* ¶ 69.

[2] *See* Investment Company Institute, *Retirement Assets Total $32.3 Trillion in Third Quarter 2022* (Dec. 15, 2022), https://www.ici.org/statistical-report/ret_22_q3.

[3] *See* Bankrate, *Pensions Decline as 401(k) Plan Multiply*, at 4 (July 24, 2014), http://www.bankrate.com/finance/retirement/pensions-decline-as-401-k-plans-multiply-1.aspx; Congressional Research Service, *Worker Participation in Employer-Sponsored Pensions: Data in Brief*, at 4 (last updated Nov. 23, 2021), https://fas.org/sgp/crs/misc/R43439.pdf.

S. Ct. 1823, 1826 (2015). As the employee bears all risks related to excessive fees and investment underperformance, the employer has no incentive to keep costs low or remove imprudent investments.

4.    For investment management companies (like Janus Henderson), the potential for disloyal and imprudent conduct is especially high because the plan's fiduciaries can benefit the company by stocking the plan's investment menu with proprietary funds that a non-conflicted and objective fiduciary would not choose.

5.    To protect retirement plan participants, ERISA imposes strict fiduciary duties of loyalty and prudence upon plan fiduciaries. *See* 29 U.S.C. § 1104(a)(1). These twin fiduciary duties are "the highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982). Fiduciaries must act "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1)(A), with the "care, skill, prudence, and diligence" that would be expected in managing a plan of similar scope, 29 U.S.C. § 1104(a)(1)(B).

6.    Defendants have not acted in participants' best interest. Quite the opposite, they have used the Plan to promote Janus Henderson's proprietary investments and earn profits for Janus Henderson. As of the end of 2021, Defendants stocked the Plan's investment menu with 40 proprietary investments: 1 proprietary money market fund and 39 proprietary mutual funds. An objective and prudent review of comparable investments in the marketplace would have revealed numerous available investments that were less costly and superior to the Janus Henderson Funds that Defendants selected and retained in the Plan. While Defendants' disloyal and imprudent conduct generated significant profits for Janus Henderson, it has cost participants millions of dollars in excessive fees and lost investment returns since the start of the putative class period.

3

7.    Based on Defendants' conduct, Plaintiffs assert claims against Defendants for a breach of the fiduciary duties of loyalty and prudence (Count One), and against Janus Henderson for failure to monitor fiduciaries (Count Two). In connection with these claims, Plaintiffs seek to recover all losses to the Plan resulting from Defendants' fiduciary breaches, all profits earned by Defendants in connection with Defendants' breaches or the Plan's assets, and other appropriate relief.

## JURISDICTION AND VENUE

8.    Plaintiffs bring this action under 29 U.S.C. § 1132(a)(2) and (3), which permit participants in an employee retirement plan to pursue a civil action on behalf of the plan to remedy breaches of fiduciary duties and other prohibited conduct, and to obtain monetary and appropriate equitable relief as set forth in 29 U.S.C. § 1109.

9.    This case presents a federal question under ERISA, and therefore this Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1)(F).

10.    Venue is proper under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because this is the district where the Plan is administered, where the breaches of fiduciary duties giving rise to this action occurred, and where Defendants may be found.

## THE PARTIES

### PLAINTIFFS

11.    Plaintiff Sandra Schissler resides in Littleton, Colorado. She has participated in the Plan since 2012 and is a current participant. During the putative class period, Plaintiff Schissler has been invested in at least the Janus Henderson Contrarian fund, Janus Henderson Emerging Markets fund, Janus Henderson European Focus fund, Janus Henderson Flexible Bond fund, Janus

4

Henderson Forty fund, Janus Henderson Global Equity Income fund, Janus Henderson Global Real Estate fund, Janus Henderson Global Select fund, Janus Henderson Global Technology fund, Janus Henderson Growth and Income fund, Janus Henderson High-Yield fund, Janus Henderson International Opportunities fund, Janus Henderson Overseas fund, Janus Henderson Enterprise fund, Janus Henderson Multi-Sector Income Fund, Janus Henderson Mid Cap Value fund, Janus Henderson Research fund, Janus Henderson Small-Mid Cap Value fund, Janus Henderson Small Cap Value fund, and Janus Henderson Venture fund. As a result, she has been financially injured by Defendants' unlawful conduct. Plaintiff Schissler's account would be worth more today had Defendants not violated ERISA as described herein.

12.     Plaintiff Karly Sissel resides in Oshkosh, Nebraska. She has participated in the Plan since 2000 and is a current participant. During the putative class period, Plaintiff Sissel has been invested in at least the Janus Henderson Forty fund, Janus Henderson Research fund, Janus Henderson Adaptive Risk Managed US Equity fund, Janus Henderson Overseas fund, Janus Henderson Global Life Sciences fund, Janus Henderson Global Technology fund, and Janus Henderson Balanced fund. As a result, she has been financially injured by Defendants' unlawful conduct. Plaintiff Sissel's account would be worth more today had Defendants not violated ERISA as described herein.

13.     Plaintiff Derrick Hittson resides in Lakewood, Colorado. He has participated in the Plan since 2015 and is a current participant. During the putative class period, Plaintiff Hittson has been invested in at least the Janus Henderson Emerging Markets fund, Janus Henderson Global Equity Income fund, Janus Henderson International Opportunities fund, Janus Henderson Emerging Markets Managed Volatility Fund, Janus Henderson Research fund, Janus Henderson

Overseas fund, Janus Henderson Contrarian fund, Janus Henderson Enterprise fund, Janus Henderson Large Cap Value Fund, Janus Henderson Forty fund, Janus Henderson International Managed Volatility Fund, Janus Henderson High-Yield fund, and Janus Henderson Flexible Bond fund. As a result, he has been financially injured by Defendants' unlawful conduct. Plaintiff Hittson's account would be worth more today had Defendants not violated ERISA as described herein.

**THE PLAN**

14. The Plan was established on July 12, 2000.

15. The Plan covers eligible employees and former employees of Janus Henderson and affiliated employers.

16. The Plan is an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2)(A) and a "defined contribution plan" within the meaning of 29 U.S.C. § 1002(34). The Plan is a qualified plan under 26 U.S.C. § 401, commonly referred to as a "401(k) plan."

17. From 2016 through the end of 2021 (the last year for which data is publicly available), the Plan had between 1,700 and 1,900 participants and approximately $246 million to $512 million in assets.

18. Plan participants can invest their account balance in the funds selected by the Plan's fiduciaries. As of the end of 2016, the Plan's investment menu included 53 investments, including 44 proprietary Janus Henderson Funds.[4] From 2016 until 2021, certain Janus Henderson Funds were eliminated from the Plan's menu due to liquidations or mergers. But Defendants did not

---

[4] The Plan's proprietary investments include those managed by Janus Henderson and its subsidiaries, including Intech Investment Management LLC and Perkins Investment Management.

choose to remove a single proprietary Janus Henderson investment from the Plan's menu during that time. In fact, they often added new proprietary Janus Henderson Funds shortly after each fund's creation. So, by the end of 2021, the Plan's menu consisted of 50 investments, including 40 proprietary Janus Henderson Funds.[5]

19.    The Plan's terms provide that "the Janus [Henderson] Funds may be removed as investment options under the Plan only by amendment of the Plan by [Janus Henderson]."

**DEFENDANTS**

*Janus Henderson US (Holdings) Inc.*

20.    Janus Henderson is a global active-asset management group duly incorporated in Colorado and Delaware.

21.    In 2017, Janus Capital Group Inc. ("Janus Capital") and Henderson Group plc ("Henderson Group") merged to become Janus Henderson. Before the merger, Janus Capital was an investment firm headquartered in Denver, Colorado, and Henderson Group was a global investment management company with is principal place of business in London, United Kingdom.

22.    Since the merger, Janus Henderson has faced significant challenges, including losing several executives.[6] And, as of February 2022, Janus Henderson had experienced "16 straight quarters of outflows of investor money."[7]

---

[5] The Plan's target-date series (managed by Fidelity) was added to the Plan in 2018 and is counted as a single investment option.

[6] *See* Loukia Gyftopoulou, Silla Brush, and Scott Deveu, *How Janus Henderson Lost Two CEOs and Billions of Client Assets*, Bloomberg (May 23, 2022), https://www.bloomberg.com/news/articles/2022-05-24/how-janus-henderson-lost-two-ceos-and-billions-of-client-assets.

[7] Pensions & Investments, *Nelson Peltz gets Janus board seats, amping up pressure on firm* (Feb. 1, 2022), https://www.pionline.com/money-management/nelson-peltz-gets-janus-board-seats-amping-pressure-firm.

23.     The Plan's Forms 5500 (filed with the United States Department of Labor) identify Janus Henderson as the plan sponsor. *See* 29 U.S.C. § 1002(16)(B) (defining plan sponsor). As the plan sponsor, Janus Henderson has ultimate decision-making authority with respect to the Plan including the management and administration of the Plan and its investments. Because Janus Henderson exercises discretionary authority or discretionary control with respect to management and administration of the Plan and disposition of Plan assets, it is a functional fiduciary under 29 U.S.C. § 1002(21)(A).

24.     The Plan's Forms 5500 also identify Janus Henderson as the plan administrator. *See* 29 U.S.C. § 1002(16)(A) (defining plan administrator). As the plan administrator, Janus Henderson is a named fiduciary of the Plan for purposes of ERISA. *See* 29 C.F.R. § 2509.75-8 at D-3.

25.     The Plan's terms identify Janus Henderson as a named fiduciary of the Plan. The Plan's terms also provide Janus Henderson with (1) the "right at any time to amend" the Plan; and (2) the right to remove the Janus Henderson Funds from the Plan's menu.

26.     To the extent that Janus Henderson mandated inclusion of the Janus Henderson Funds in the Plan's investment menu, that is an investment decision that Janus Henderson had fiduciary responsibility for.

27.     Even if it delegated fiduciary functions to others (like the Committee), Janus Henderson maintained fiduciary responsibilities with respect to the Plan. The authority to appoint, retain, and remove other plan fiduciaries constitutes discretionary authority or control over the management or administration of the plan, and thus confers fiduciary status under 29 U.S.C. § 1002(21)(A). *See* 29 C.F.R. § 2509.75-8 (D- 4); *Liss v. Smith*, 991 F. Supp. 278, 310 (S.D.N.Y.

1998) ("It is by now well-established that the power to appoint plan trustees confers fiduciary status."). And the responsibility for appointing and removing other fiduciaries carries with it an accompanying duty to monitor the appointed fiduciaries, and to ensure that they are complying with the terms of the Plan and ERISA's standards. *See* 29 C.F.R. § 2509.75-8 (FR-17); *In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d 1207, 1231 (D. Kan. 2004) ("Consistent with this opinion from the Department of Labor, courts have widely held that an appointing fiduciary has an ongoing duty to monitor its fiduciary appointees.").

### *The Janus Henderson Advisory Committee*

28.     The Committee assists Janus Henderson with administration of the Plan. The Committee is responsible for overseeing and monitoring the Plan's investments. The Committee is also generally responsible for: (A) Promulgating the Plan's Investment Policy Statement; (B) Selecting the core funds available under the Plan; (C) Reviewing the funds for compliance with the Investment Policy Statement; (D) Making revisions to the Investment Policy Statement to reflect changing conditions within the Plan, the investment environment, or as the Committee sees fit.

29.     In performance of its duties, the Committee exercises "authority or control respecting management or disposition of the Plan's assets" and is therefore a fiduciary under 29 U.S.C. § 1002(21)(A).

30.     The Plan's terms also identify the Committee as a named fiduciary of the Plan.

31.     To the extent that the Committee mandated inclusion of the Janus Henderson Funds in the Plan's investment menu, that is an investment decision that the Committee had fiduciary responsibility for.

9

32.     To the extent that the Committee delegated any of its fiduciary functions to others, it maintained fiduciary responsibilities with respect to the Plan. *See* 29 C.F.R. § 2509.75-8 (FR-17); *In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d at 1231.

*The Doe Defendants*

33.     The Doe Defendants are or were members of the Committee during the putative class period. Thus, each of the Doe Defendants are also fiduciaries under 29 U.S.C. § 1002(21)(A). Plaintiffs do not currently know the identities of the Doe Defendants.

34.     Each fiduciary Defendant identified above is also subject to co-fiduciary liability under 29 U.S.C. § 1105(a)(1)-(3) because they enabled other fiduciaries to commit breaches of fiduciary duties, failed to comply with 29 U.S.C. § 1104(a)(1) in the administration of their duties, and/or failed to remedy other fiduciaries' breaches of their duties, despite having knowledge of the breaches.

## LEGAL AND FACTUAL BACKGROUND

### ERISA FIDUCIARY DUTIES

35.     ERISA imposes strict fiduciary duties of loyalty and prudence upon retirement plan fiduciaries. 29 U.S.C. § 1104(a)(1) states, in relevant part:

> [A] fiduciary shall discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries and—
>
> (A)     for the exclusive purpose of
>
> (i)     providing benefits to participants and their beneficiaries; and
>
> (ii)     defraying reasonable expenses of administering the plan;
>
> (B)     with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with

10

> such matters would use in the conduct of an enterprise of like character and with like aims . . . .

36.     These ERISA fiduciary duties are "the highest known to the law." *Donovan*, 680 F.2d at 272 n.8. "A fiduciary's process must bear the marks of loyalty, skill, and diligence expected of an expert in the field. It is not enough to avoid misconduct, kickback schemes, and bad-faith dealings. The law expects more than good intentions. A pure heart and an empty head are not enough." *Sweda v. Univ. of Pa.*, 923 F.3d 320, 339 (3d Cir. 2019) (quotation omitted), *cert. denied*, 140 S. Ct. 2565 (2020).

### DUTY OF LOYALTY

37.     The duty of loyalty requires fiduciaries to act with "an eye single" to the interests of plan participants. *Pegram v. Herdrich*, 530 U.S. 211, 235 (2000) (quoting *Donovan*, 680 F.2d at 271). "Perhaps the most fundamental duty of a [fiduciary] is that [it] must display . . . complete loyalty to the interests of the beneficiary and must exclude all selfish interest and all consideration of the interests of third persons." *Id.* at 224 (quoting G Bogert et al., *Law of Trusts and Trustees* § 543 (rev. 2d ed. 1980)). Thus, "in deciding whether and to what extent to invest in a particular investment, a fiduciary must ordinarily consider *only* factors relating to the interests of plan participants and beneficiaries. A decision to make an investment may not be influenced by non-economic factors unless the investment, when judged *solely* on the basis of its economic value to the plan, would be equal or superior to alternative investments available to the plan." U.S. Dep't of Labor ERISA Adv. Op. 88-16A, 1988 WL 222716, at *3 (Dec. 19, 1988) (emphasis added). "Breaches of the 'unwavering' duty of loyalty occur when a fiduciary deviates from that 'single-minded devotion,' placing its interests … above that of plan participants or beneficiaries." *Vellali*

*v. Yale Univ.*, 308 F. Supp. 3d 673, 688 (D. Conn. 2018) (quoting *Berlin v. Mich. Bell Tel. Co.*, 858 F.2d 1154, 1162 (6th Cir. 1988)).

**DUTY OF PRUDENCE**

38.     ERISA also "imposes a 'prudent person' standard by which to measure fiduciaries' investment decisions and disposition of assets." *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2467 (2014) (quotation omitted). "[A] fiduciary's conduct at all times must be reasonably supported in concept and must be implemented with proper care, skill, and caution." *Sweda*, 923 F.3d at 333 (quotation omitted). "[I]f there is indeed a 'hallmark' of fiduciary activity identified in the statute, it is prudence." *Id.*

39.     The duty of prudence includes "a continuing duty to monitor [plan] investments and remove imprudent ones" that exists "separate and apart from the [fiduciary's] duty to exercise prudence in selecting investments." *Tibble*, 135 S. Ct. at 1828; *see Hughes v. Nw. Univ.*, 142 S. Ct. 737, 740 (2022) (Plan fiduciaries have a "duty to monitor all plan investments and remove any imprudent ones."). If an investment is imprudent, the plan fiduciary "must dispose of it within a reasonable time." *Tibble*, 135 S. Ct. at 1828 (quotation omitted).

40.     The duty of prudence necessarily entails consideration of investment costs. *See Sweda*, 923 F.3d at 328–29 ("Fiduciaries must … consider a plan's power ... to obtain favorable investment products, particularly when those products are substantially identical—other than their lower cost—to products the trustee has already selected." (quotation omitted)). At retirement, employees' benefits "are limited to the value of their own individual investment accounts, which is determined by the market performance of employee and employer contributions, less expenses." *Tibble*, 135 S. Ct. at 1826. "Expenses, such as management or administrative fees, can sometimes

significantly reduce the value of an account in a defined-contribution plan[] … by decreasing its immediate value, and by depriving the participant of the prospective value of funds that would have continued to grow if not taken out in fees." *Sweda*, 923 F.3d at 328 (quotation omitted).[8]

41.     To protect retirement plan participants, ERISA requires plan fiduciaries to monitor plan expenses and ensure that they are reasonable. *See* 29 U.S.C. § 1104(a)(1)(A)(ii) ("[A] fiduciary shall discharge [its] duties … solely in the interest of participants … for the exclusive purpose of[] providing benefits … and defraying reasonable expenses of administering the plan[.]"); *Sweda*, 923 F.3d at 328 ("Fiduciaries must … understand and monitor plan expenses."); *accord* Restatement (Third) of Trusts § 88, cmt. a (2007) ("Implicit in a trustee's fiduciary duties is a duty to be cost conscious.").[9]

## DEFENDANTS' VIOLATIONS OF ERISA

### I.    DEFENDANTS' PROCESS FOR SELECTING AND MONITORING INVESTMENTS WAS DISLOYAL AND IMPRUDENT

42.     Although including proprietary funds in a plan's investment menu is not a per se breach of the duty of loyalty or prudence, a fiduciary's process for selecting and monitoring proprietary funds is subject to the same duties that apply to selecting and monitoring

---

[8] The DOL and SEC have also warned that although the fees and costs associated with investment products and services may seem small, over time they can have a significant impact on an investor's portfolio. *See* DOL, *A Look at 401(k) Plan Fees*, at 1–2 (2013), https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/publications/a-look-at-401k-plan-fees.pdf (cautioning that 1% difference annually can reduce the investor's account balance at retirement by 28%); SEC Investor Bulletin, *How Fees and Expenses Affect Your Investment Portfolio*, at 1, 3 (2014), https://www.sec.gov/investor/alerts/ib_fees_expenses.pdf.

[9] The legal construction of an ERISA fiduciary's duties is "derived from the common law of trusts." *Tibble*, 135 S. Ct. at 1828 (quotation omitted). Therefore "[i]n determining the contours of an ERISA fiduciary's duty, courts often must look to the law of trusts." *Id.*

13

nonproprietary funds. Based on Defendants' retention of proprietary funds over less expensive, superior nonproprietary funds, it is reasonable to infer that Defendants' process for selecting and monitoring the Janus Henderson Funds was disloyal and imprudent.

43.     Defendants constructed and maintained a Plan investment menu that was unlike any other similarly sized plan. Throughout the putative class period, Defendants acted with blind preference for the proprietary Janus Henderson Funds. For example, as of 2021, every mutual fund offered by Janus Henderson was included in the Plan. Indeed, all non-money market or non-inflation-protection actively managed investments among the Plan's designated investment alternatives[10] are the Janus Henderson Funds.[11] No other similarly sized defined contribution plan entrusts essentially all its actively managed investments to Janus Henderson.

44.     Defendants' favoritism has led to the payment of excessive investment management fees by participants to Janus Henderson, a failure to prudently monitor and remove the underperforming proprietary Janus Henderson Funds, and a failure to engage in a prudent and loyal process in the selection of new Plan investments.

### A. Defendants' Preference for the Janus Henderson Funds Caused Participants to Pay Excessive Fees

45.     The Janus Henderson Funds are actively managed and serve as essentially the only actively managed investments available to participants. While a fiduciary may consider higher-

---

[10] A designated investment alternative is "any investment alternative designated by the plan into which participants and beneficiaries may direct the investment of assets held in, or contributed to, their individual accounts." 29 CFR § 2550.404a-5(h)(4).

[11] The Plan's nonproprietary investments have included low-cost index funds managed by Vanguard and Fidelity with expense ratios between 0.02% to 0.11%, a passively managed target-date fund series managed by Fidelity with expense ratios between 0.07% and 0.12%, an actively managed inflation-protected securities fund managed by Vanguard at an expense ratio of 0.07%, and money market funds managed by Fidelity with expense ratios between 0.15% to 0.32%.

cost, actively managed funds as an alternative to lower-cost, passively managed funds, "these added costs . . . must be justified by realistically evaluated return expectations." Restatement (Third) of Trusts § 90 cmt. h(2); *see also id.* § 90 cmt. b ("[C]ost-conscious management is fundamental to prudence in the investment function."). In this case, the Janus Henderson Funds did not earn their fees. *See infra* at § I.B.

46.     And, even compared to other actively managed funds, the Janus Henderson Funds charged higher fees relative to nonproprietary alternatives selected by similarly sized plans. So, it is reasonable to infer that Defendants failed to properly investigate lower-cost, nonproprietary alternatives.

47.     Because the Plan is laden with the high-cost, proprietary Janus Henderson Funds, the Plan's expenses are significantly higher than other comparable retirement plans. Throughout the putative class period, annual investment fees paid by Plan participants were at least 0.45% to 0.50% of total Plan assets, consistently higher than the average 401(k) plan of similar size.[12] But excluding the Plan's nonproprietary options (all of which are passively managed investments) results in annual investment fees of at least 0.64% to 0.68% of total Plan assets. In contrast, the average 401(k) plan with $250 million to $500 million in assets had total plan costs of 0.44% in 2016, down to 0.42% in 2018, the most recent year for which total plan cost data is available.[13]

---

[12] Total plan cost, as determined by the BrightScope/ICI Defined Contribution Plan annual profiles, "includes asset-based investment management fees, asset-based administrative and advice fees, and other fees (including insurance charges) from the Form 5500 and audited financial statements of ERISA-covered DC plans." BrightScope & Investment Company Institute, *The BrightScope/ICI Defined Contribution Plan Profile: A Close Look at 401(k) Plans, 2018*, at 47 ("2018 ICI Study"), https://www.ici.org/system/files/2021-07/21_ppr_dcplan_profile_401k.pdf.
[13] 2018 ICI Study at 49; BrightScope & Investment Company Institute, *The BrightScope/ICI Defined Contribution Plan Profile: A Close Look at 401(k) Plans, 2016*, at 47 ("2016 ICI Study"), https://www.ici.org/system/files/attachments/19_ppr_dcplan_profile_401k.pdf.

48.     The Janus Henderson Funds' excessive fees drive the Plan's excessive fees.[14] In 2018, the most recent year for which average fee data is available, the Janus Henderson Funds' fees exceeded the average expense ratio for funds within the same asset class category among plans with $250 million to $500 million in assets by an average of 62%.[15] When looking only at leading *actively* managed funds invested in similar styles to the Janus Henderson Funds, the excessive fees are approximately 25% and as high as 131% above average.

| Proprietary Fund | ICI - BrightScope Category / Morningstar Global Category | Fund Net Expense Ratio (2018) | Average 401(k) Fund Expense Ratio (2018) | Percentage Fee Excess Over 401(k) Average | Average Actively Managed Expense Ratio (2018)[16] | Percentage Fee Excess Over Actively Managed Average |
|---|---|---|---|---|---|---|
| JH Abs Ret Inc Opps. N | Domestic Bond / Fixed Income Misc. | 0.66% | 0.34% | **94%** | 0.78% | -18% |

[14] The Plan's nonproprietary investments are low-cost index funds, a passive target-date fund series, and a money market fund, ranging between 0.02% and 0.32% in fees.

[15] Expense ratios for a given mutual fund generally do not vary greatly over a period of time like the putative class period. Thus, Plaintiffs' comparison of the Janus Henderson Funds' 2018 expense ratios to averages from this same year are illustrative of the Janus Henderson Funds' excessive fees throughout the putative class period. For example, Janus Henderson Enterprise N, one of the Plan's largest Janus Henderson holdings, has carried an expense ratio ranging from 0.66% to 0.68% since 2016.

[16] The "Actively Managed Average Expense Ratio" consists of the average annual report expense ratio of the least expensive share class of the twenty largest actively managed mutual funds by assets under management managed in a similar investment style to each Janus Henderson fund, as represented by the Morningstar Global Category. The least expensive share class is that which carries the lowest expense ratio for a given mutual fund and is generally reserved for larger institutional or retirement plan investors. This primarily includes institutional and R6 share classes. Janus Henderson's least expensive share class is the "N" class which, like institutional and R6 share classes, carries the lowest expense ratio of all Janus Henderson share classes, is available to investors with larger initial investments, and is not subject to front or deferred loads. Averages are calculated separately for Asia ex-Japan Equity, Cautious Allocation, Europe Equity Large Cap, Fixed Income Miscellaneous, Flexible Allocation, Global Emerging Markets Equity, Global Equity Large Cap, Global Equity Mid/Small Cap, Global Fixed Income, Healthcare Sector Equity,

| Proprietary Fund | ICI - BrightScope Category / Morningstar Global Category | Fund Net Expense Ratio (2018) | Average 401(k) Fund Expense Ratio (2018) | Percentage Fee Excess Over 401(k) Average | Average Actively Managed Expense Ratio (2018)[16] | Percentage Fee Excess Over Actively Managed Average |
|---|---|---|---|---|---|---|
| JH Adapt. Global Allc N | Non-Target Date Balanced / Mod. Alloc. | 0.73% | 0.39% | **87%** | 0.56% | **30%** |
| JH Adapt. Risk Mgd U.S. Eq N | Domestic Equity / US Equity Large Cap | 0.54% | 0.43% | **26%** | 0.35% | **54%** |
| JH Asia Equity N | International Equity / Asia ex-Japan Eq. | 1.13% | 0.56% | **102%** | 1.08% | **5%** |
| JH Balanced N | Non-Target Date Balanced / Mod. Alloc. | 0.57% | 0.39% | **46%** | 0.56% | **2%** |
| JH Contrarian N | Domestic Equity / US Equity Mid Cap | 0.50% | 0.43% | **16%** | 0.60% | -17% |
| JH Developed World Bond N | International Bond / Global Fixed Income | 0.67% | 0.57% | **18%** | 0.49% | **37%** |
| JH Diversified Alts N | Other / Multialternative | 1.14% | 0.62% | **84%** | 1.49% | -23% |
| JH Dividend & Inc Builder N | Non-Target Date Balanced / Flexible Alloc. | 0.86% | 0.39% | **121%** | 1.06% | -19% |
| JH Emerg Mkts Mgd Vol N | International Equity / Global Em. Mkts. Eq. | 0.97% | 0.56% | **73%** | 0.82% | **18%** |
| JH Emerging Markets N | International Equity / Global Em. Mkts. Eq. | 1.03% | 0.56% | **84%** | 0.82% | **26%** |
| JH Enterprise N | Domestic Equity / US Equity Mid Cap | 0.66% | 0.43% | **53%** | 0.60% | **10%** |
| JH European Focus N | International Equity / Europe Eq. Large Cap | 0.97% | 0.56% | **73%** | 0.87% | **11%** |
| JH Flexible Bond N | Domestic Bond / US Fixed Income | 0.44% | 0.34% | **29%** | 0.33% | **33%** |
| JH Forty N | Domestic Equity / US Equity Large Cap | 0.60% | 0.43% | **40%** | 0.35% | **71%** |

Moderate Allocation, Multialternative, Real Estate Sector Equity, Technology Sector Equity, US Equity Large Cap, US Equity Mid Cap, US Equity Small Cap, and US Fixed Income Morningstar Global Categories.

| Proprietary Fund | ICI - BrightScope Category / Morningstar Global Category | Fund Net Expense Ratio (2018) | Average 401(k) Fund Expense Ratio (2018) | Percentage Fee Excess Over 401(k) Average | Average Actively Managed Expense Ratio (2018)[16] | Percentage Fee Excess Over Actively Managed Average |
|---|---|---|---|---|---|---|
| JH Glb Tech and Innovt N | International Equity / Technology Sector Eq. | 0.69% | 0.56% | **23%** | 1.01% | -32% |
| JH Global Allc Cnsrv I | Non-Target Date Balanced / Cautious Alloc. | 0.89% | 0.39% | **128%** | 0.61% | **46%** |
| JH Global Allc Gr I | Non-Target Date Balanced / Flexible Alloc. | 0.92% | 0.39% | **136%** | 1.06% | -13% |
| JH Global Allc Mod I | Non-Target Date Balanced / Mod. Alloc. | 0.91% | 0.39% | **133%** | 0.56% | **63%** |
| JH Global Bond N | International Bond / Global Fixed Income | 0.60% | 0.57% | **5%** | 0.49% | **22%** |
| JH Global Equity Income N | International Equity / Global Eq. Large Cap | 0.72% | 0.56% | **29%** | 0.63% | **14%** |
| JH Global Inc Mgd Volatil N | International Equity / Global Eq. Large Cap | 0.51% | 0.56% | -9% | 0.63% | -19% |
| JH Global Life Sciences N | Domestic Equity / Healthcare Sector Eq. | 0.70% | 0.43% | **63%** | 0.87% | -20% |
| JH Global Real Estate N | Domestic Equity / Real Estate Sector Eq. | 0.93% | 0.43% | **116%** | 0.72% | **29%** |
| JH Global Research N | International Equity / Global Eq. Large Cap | 0.54% | 0.56% | -4% | 0.63% | -14% |
| JH Global Select N | International Equity / Global Eq. Large Cap | 0.68% | 0.56% | **21%** | 0.63% | **8%** |
| JH Global Value N | International Equity / Global Eq. Large Cap | 0.67% | 0.56% | **20%** | 0.63% | **6%** |
| JH Growth and Income N | Domestic Equity / US Equity Large Cap | 0.65% | 0.43% | **51%** | 0.35% | **85%** |
| JH High-Yield N | Domestic Bond / US Fixed Income | 0.67% | 0.34% | **97%** | 0.33% | **103%** |
| JH Int'l Opps N | International Equity / Global Eq. Large Cap | 0.94% | 0.56% | **68%** | 0.63% | **49%** |
| JH Int'l Sm Cp N | International Equity / Global Eq. Mid/Small Cap | 1.07% | 0.56% | **91%** | 0.93% | **15%** |

18

| Proprietary Fund | ICI - BrightScope Category / Morningstar Global Category | Fund Net Expense Ratio (2018) | Average 401(k) Fund Expense Ratio (2018) | Percentage Fee Excess Over 401(k) Average | Average Actively Managed Expense Ratio (2018)[16] | Percentage Fee Excess Over Actively Managed Average |
|---|---|---|---|---|---|---|
| JH Int'l Value N | International Equity/ Global Eq. Large Cap | 0.86% | 0.56% | 54% | 0.63% | 37% |
| JH Int'l Mgd Volatil N | International Equity / Global Eq. Large Cap | 0.78% | 0.56% | 39% | 0.63% | 24% |
| JH Large Cap Value N | Domestic Equity / US Equity Large Cap | 0.59% | 0.43% | 37% | 0.35% | 69% |
| JH Mid Cap Value N | Domestic Equity / US Equity Mid Cap | 0.72% | 0.43% | 67% | 0.60% | 20% |
| JH Multi-Sector Income N | Domestic Bond / US Fixed Income | 0.69% | 0.34% | 103% | 0.33% | 109% |
| JH Overseas N | International Equity / Global Eq. Large Cap | 0.53% | 0.56% | -5% | 0.63% | -16% |
| JH Research N | Domestic Equity / US Equity Large Cap | 0.56% | 0.43% | 30% | 0.35% | 60% |
| JH Short Duration Flex Bd N | Domestic Bond / US Fixed Income | 0.50% | 0.34% | 47% | 0.33% | 52% |
| JH Small Cap Value N | Domestic Equity / US Equity Small Cap | 0.81% | 0.43% | 88% | 0.67% | 21% |
| JH Small-Mid Cap Value N | Domestic Equity / US Equity Mid Cap | 0.95% | 0.43% | 121% | 0.60% | 58% |
| JH Triton N | Domestic Equity / US Equity Small Cap | 0.66% | 0.43% | 53% | 0.67% | -1% |
| JH U.S. Growth Opps N | Domestic Equity / US Equity Large Cap | 0.81% | 0.43% | 88% | 0.35% | 131% |
| JH Value Plus Income N | Non-Target Date Balanced / Cautious Alloc. | 0.69% | 0.39% | 77% | 0.61% | 13% |
| JH Venture N | Domestic Equity / US Equity Small Cap | 0.67% | 0.43% | 56% | 0.67% | 0% |

49.    Despite their high cost, Defendants failed to remove the Janus Henderson Funds in favor of lower-cost, nonproprietary funds because doing so would not serve Janus Henderson's business interests. To the extent that the Plan's terms required inclusion of the Janus Henderson

19

Funds, Janus Henderson had the authority to amend the Plan's terms and remove the Janus Henderson Funds from the Plan's menu.

50.     Had Defendants prudently monitored the Plan's investments—using a process that was not polluted by self-interest—Defendants would have removed the Janus Henderson Funds from the Plan or replaced them with nonproprietary funds that offered comparable investment management services and superior performance at significantly less expense. Given the excessive fees charged by the Janus Henderson Funds, and the availability of comparable or superior funds with significantly lower expenses, the compensation paid to Janus Henderson and its affiliates for their services was unreasonably high.

**B. Defendants Failed to Remove the Janus Henderson Funds Despite Chronic Underperformance**

51.     Defendants' imprudent monitoring and retention of underperforming funds shows their favoritism for the Janus Henderson Funds.

52.     In large part because of their high fees, the Janus Henderson Funds tended to underperform—costing the Plan tens of millions of dollars in lost profits that participants otherwise would have had in their accounts if Defendants had managed the Plan in a loyal and prudent manner. A prudent fiduciary offering high-fee investments like the Janus Henderson Funds would continuously monitor whether the extra fees were justified by a reasonable expectation of increased returns. *See Baker v. John Hancock Life Ins. Co. (U.S.A.)*, 2020 WL 8575183, at *1 (D. Mass. July 23, 2020) (Although "ERISA permits a financial services firm to offer its proprietary funds in its retirement plan[,]" a "fiduciary has a 'continuing duty to monitor plan investments and remove imprudent ones.'" (quoting *Tibble*, 135 S. Ct. at 1828)). Defendants failed to do so and maintained an investment lineup whose actively managed funds were entirely proprietary despite significant

20

and prolonged underperformance in comparison to benchmarks and superior investment alternatives managed in a similar style.

53. One example of an imprudently retained fund is the Janus Henderson Overseas fund. This fund has consistently and materially trailed its prospectus benchmark. It has also underperformed when compared to less expensive funds that share the Overseas fund's Morningstar Category, prospectus benchmark, and employ similar investment objectives and risk. That is, each fund's prospectus benchmark is the MSCI ACWI ex USA index, each fund falls within the Foreign Large Blend Morningstar Category, each fund is actively managed, each fund invests at least 80% of its assets in non-U.S. stocks primarily within developed European stocks, and each fund therefore incurs foreign investments risk.[17] Nevertheless, it has remained in the Plan:

| Fund (Ticker) | Net Expense Ratio (Current) | 2016 (10-Year Return) | 2017 (10-Year Return) | 2018 (10-Year Return) | 2019 (10-Year Return) | 2020 (10-Year Return) | 2021 (10-Year Return) |
|---|---|---|---|---|---|---|---|
| Janus Henderson Overseas N (JDINX) | 0.82% | -2.23% | -1.97% | 3.91% | 0.63% | 0.42% | 5.80% |
| MSCI ACWI ex USA NR USD | n/a | 0.96% | 1.84% | 6.57% | 4.97% | 4.92% | 7.28% |
| Hartford International Opportunities R6 (IHOVX) | 0.69% | 3.28% | 3.09% | 6.73% | 6.16% | 6.68% | 9.02% |
| MFS Int'l Diversification R6 (MDIZX) | 0.73% | 2.58% | 4.03% | 8.23% | 7.53% | 7.70% | 9.56% |

---

[17] Foreign markets can be more volatile than U.S. markets, and funds that invest in these markets may have their returns and net asset values affected by fluctuations in currency exchange rates, differences in regulatory frameworks between foreign countries and the U.S., or political or economic conditions within a particular country.

54.    Comparing the fund's alpha[18] to the fund's benchmark and suitable market alternatives shows that the Overseas fund's underperformance was caused by its managers' lack of skill—rather than the fund's risk profile:

| Fund (Ticker) | 2016 (10-Year Alpha) | 2017 (10-Year Alpha) | 2018 (10-Year Alpha) | 2019 (10-Year Alpha) | 2020 (10-Year Alpha) | 2021 (10-Year Alpha) |
|---|---|---|---|---|---|---|
| Janus Henderson Overseas N (JDINX) | -2.23 | -3.07 | -2.81 | -4.52 | -4.72 | -2.28 |
| Hartford International Opportunities R6 (IHOVX) | 2.25 | 1.26 | 0.37 | 1.33 | 1.92 | 2.04 |
| MFS Int'l Diversification R6 (MDIZX) | 1.49 | 2.16 | 2.06 | 2.86 | 3.09 | 2.88 |

55.    Given this chronic underperformance and inferior alpha, a loyal and prudent fiduciary would have removed the Overseas fund from the Plan. Defendants' failure to do so supports an inference that their process for monitoring the Plan's investments was disloyal and imprudent.

56.    Another illustrative example of Defendants' flawed monitoring process is the retention of the Janus Henderson Research fund. Like the Overseas fund, the Research fund has failed to keep pace with its prospectus benchmark and less expensive funds that share this prospectus benchmark and have similar investment objectives and risk. That is, each fund's prospectus benchmark is the Russell 1000 Growth index, each fund falls within the Large Growth Morningstar Category, each fund is actively managed, each fund invests at least 90% of its assets in U.S. stocks while concentrating between 43% and 46% of assets in their respective top ten

---

[18] Alpha is a metric used to measure a manager's skill on a risk-adjusted basis. Positive alpha shows skill, an alpha of zero shows zero skill, and negative alpha shows the manager made decisions that were worse than simply tracking the benchmark. *See* Investopedia, *Alpha*, https://www.investopedia.com/terms/a/alpha.asp (last visited Aug. 30, 2022).

holdings, and each fund's strategy and objective is to seek long-term capital appreciation and growth:

| Fund (Ticker) | Net Expense Ratio (Current) | 2016 (10-Year Return) | 2017 (10-Year Return) | 2018 (10-Year Return) | 2019 (10-Year Return) | 2020 (10-Year Return) | 2021 (10-Year Return) |
|---|---|---|---|---|---|---|---|
| Janus Henderson Research N (JRANX) | 0.54% | 8.25% | 8.39% | 14.60% | 14.17% | 15.25% | 17.90% |
| Russell 1000 Growth TR USD | n/a | 8.33% | 10.00% | 15.29% | 15.22% | 17.21% | 19.79% |
| JPMorgan Large Cap Growth R6 (JLGMX) | 0.48% | 8.44% | 9.66% | 15.39% | 15.77% | 18.62% | 20.30% |
| MFS Growth R6 (MFEKX) | 0.43% | 8.35% | 9.31% | 14.97% | 15.03% | 16.63% | 19.26% |

57.    And like the Overseas fund, the Research fund's inferior alpha shows that its underperformance was caused by its managers' lack of skill—not the fund's risk profile:

| Fund (Ticker) | 2016 (10-Year Alpha) | 2017 (10-Year Alpha) | 2018 (10-Year Alpha) | 2019 (10-Year Alpha) | 2020 (10-Year Alpha) | 2021 (10-Year Alpha) |
|---|---|---|---|---|---|---|
| Janus Henderson Research N (JRANX) | -0.55 | -2.17 | -1.13 | -1.11 | -1.92 | -1.35 |
| JPMorgan Large Cap Growth R6 (JLGMX) | 0.06 | -0.42 | -0.31 | -0.11 | 0.19 | -0.56 |
| MFS Growth R6 (MFEKX) | 0.14 | -0.50 | -0.14 | 0.00 | 0.42 | 0.64 |

58.    Moreover, when certain Janus Henderson Funds dropped off the Plan's menu, it was only because of the fund's liquidation or merger—not the result of a loyal or prudent review process:

23

| Fund | Year of Removal from Plan | Year of Fund Liquidation/Merger |
|---|---|---|
| INTECH U.S. Core | 2017 | 2017 |
| Janus Henderson Fund | 2017 | 2017 |
| Janus Henderson International Equity | 2017 | 2017 |
| Janus Henderson Twenty | 2017 | 2017 |
| Janus Henderson Real Return | 2018 | 2018 |
| Janus Henderson Diversified Alternatives | 2020 | 2020 |
| Janus Henderson International Small Cap Value | 2020 | 2020 |
| Janus Henderson U.S. Growth Opportunities | 2020 | 2020 |
| Janus Henderson Global Value | 2021 | 2021 |
| Janus Henderson International Value | 2021 | 2021 |
| Janus Henderson Large Cap Value | 2021 | 2021 |
| Janus Henderson Value Plus Income | 2021 | 2021 |
| Janus Henderson Emerging Markets Managed Volatility | 2022 | 2022 |
| Janus Henderson Global Income Managed Volatility | 2022 | 2022 |
| Janus Henderson International Managed Volatility | 2022 | 2022 |

59.     The continued retention of these funds leading up to their liquidation or merger further harmed participants. To illustrate, twelve of the fifteen funds trailed their prospectus benchmarks leading up to the funds' closure, and many by multiple percentage points:

| Fund | Ticker | Prosp. Benchmark | Long-Term Performance Preceding Liquidation/ Merger[19] | Prospectus Benchmark Long-Term Performance | Fund vs. Prosp. Benchmark Long-Term Performance |
|---|---|---|---|---|---|
| INTECH U.S. Core | JRCNX | S&P 500 TR USD | 7.26% | 7.31% | **-0.05%** |
| Janus Henderson Fund | JDGNX | Russell 1000 Growth TR USD | 6.13% | 8.33% | **-2.20%** |

---

[19] Performance data are the ten-year returns for each fund and their respective prospectus benchmarks as shown in the prospectus immediately preceding each fund's liquidation or merger. Where ten-year data is not available, since-inception returns are shown and denoted with an asterisk.

| | | | | | |
|---|---|---|---|---|---|
| **Janus Henderson International Equity** | JNIEX | MSCI EAFE NR USD | 2.34% | 0.75% | 1.59% |
| **Janus Henderson Twenty** | JNTFX | Russell 1000 Growth TR USD | 8.01% | 8.33% | **-0.32%** |
| **Janus Henderson Real Return** | JURIX | Bloomberg U.S. Treasury TIPS 1-5Y TR USD | 1.79%* | 0.67%* | 1.12% |
| **Janus Henderson Diversified Alternatives** | JDANX | Bloomberg U.S. Aggregate Bond TR USD | 0.83%* | 3.97%* | **-3.14%** |
| **Janus Henderson International Small Cap Value** | HIZRX | MSCI EAFE Small Cap NR USD | 8.46%* | 11.69%* | **-3.23%** |
| **Janus Henderson U.S. Growth Opportunities** | HGRRX | Russell 3000 Growth TR USD | 12.02%* | 14.11%* | **-2.09%** |
| **Janus Henderson Global Value** | JPPNX | MSCI World NR USD | 7.04% | 9.87% | **-2.83%** |
| **Janus Henderson International Value** | JIFNX | MSCI EAFE NR USD | 4.34%* | 6.12%* | **-1.78%** |
| **Janus Henderson Large Cap Value** | JPLNX | Russell 1000 Value TR USD | 9.99% | 11.80% | **-1.81%** |
| **Janus Henderson Value Plus Income** | JPVNX | Russell 1000 Value TR USD | 8.05%* | 12.41%* | **-4.36%** |
| **Janus Henderson Emerging Markets Managed Volatility** | JOLIX | MSCI EM NR USD | 2.25%* | 8.34%* | **-6.09%** |
| **Janus Henderson Global Income Managed Volatility** | JGGNX | MSCI World NR USD | 8.26%* | 12.10%* | **-3.84%** |
| **Janus Henderson International Managed Volatility** | JMRNX | MSCI EAFE NR USD | 5.66% | 5.51% | 0.15% |

60.     While other investors fled these Janus Henderson Funds leading up to their liquidation or merger, Defendants clung onto them until they ultimately closed and ceased operations.

61.     Given their high costs, poor performance, and limited use among other similarly sized plan fiduciaries, Defendants' decision to retain the Janus Henderson Funds in the Plan was disloyal and imprudent. Janus Henderson could have amended the Plan's terms or removed the Janus Henderson Funds from the Plan Menu. Instead, Defendants prioritized Janus Henderson's business interests and profits over the Plan's participants. Defendants' choice to offer participants

25

an investment menu where the Janus Henderson Funds serve as essentially the only actively managed options available cannot be reconciled with their duty to act with "an eye single" to participants' interests of plan participants. *Pegram*, 530 U.S. at, 235 (2000) (quotation omitted). Defendants' retention of the Janus Henderson Funds under these circumstances shows that Defendants have breached their fiduciary duties.

### C. Defendants Used an Imprudent and Disloyal Process for Selecting New Actively Managed Funds for The Plan

62. Defendants also failed to look beyond the confines of Janus Henderson Funds for the Plan's actively managed investments. And they often added proprietary Janus Henderson Funds to the Plan's menu shortly after their inception.

63. During the putative class period, Defendants added eight additional Janus Henderson Funds to the Plan's menu. But not a single nonproprietary actively managed fund has ever been added. And many of these Janus Henderson Funds were added to the Plan at the same time as their inception. For example, in 2020, Defendants added the Janus Henderson Global Sustainable Equity fund to the Plan. This fund was created on June 25, 2020. Thus, at best, the fund became a Plan investment less than six months after its creation. With no track record to assess, it is reasonable to infer that Defendants acted disloyally and imprudently in selecting the Janus Henderson Global Sustainable Equity fund for the Plan. *See*, *e.g.*, *Troudt v. Oracle Corporation*, 2017 WL 110876, at *2 (D. Colo. Mar. 22, 2017) (denying motion to dismiss where plaintiffs alleged that funds added to the plan had inadequate performance histories to warrant investment in them at all).

64. The perils of adding a fund to a 401(k) plan shortly after its inception are illustrated by another former Plan holding: the Janus Henderson International Small Cap Value fund. This

fund was created on December 15, 2016, and Defendants added it to the Plan just months afterward. But this fund was liquidated just a few years later in 2020, and it held participant assets all the way until its liquidation.

65.    Defendants' reckless use of Plan assets to seed new proprietary funds has harmed Plan participants. Since both the Janus Henderson Global Sustainable Equity fund and the Janus Henderson International Small Cap Value fund's inception, both funds have materially trailed their prospectus benchmarks. The following chart provides some examples:

| Fund (Ticker) | Inception Date | Since Inception Return[20] |
|---|---|---|
| Janus Henderson International Small Cap Value N (HIZRX) | 12/15/2016 | -0.18% |
| *MSCI EAFE Small Cap NR USD* | *n/a* | *3.43%* |
| Janus Henderson Global Sustainable Equity N (JETNX) | 6/25/2020 | 7.52% |
| *MSCI World NR USD* | *n/a* | *10.24%* |

66.    In sum, Defendants prioritized Janus Henderson's business interests and profits over participants. Defendants failed to adequately investigate marketplace alternatives in selecting and retaining funds for the Plan, choosing instead to use the Janus Henderson Funds to further Janus Henderson's interests. Defendants chose these proprietary funds even though they charged fees that were significantly higher than the fees charged by more competitive options. If Defendants had been monitoring fund expenses and investigating marketplace alternatives consistent with the practice of other 401(k) plan fiduciaries, then they would have replaced the

---

[20] The since-inception return for Janus Henderson International Small Cap Value is through April 30, 2020, the month-end immediately preceding the fund's liquidation. The since-inception return for the Janus Henderson Global Sustainable Equity fund is through August 31, 2022, the most recent month-end at the time of filing this Complaint.

Janus Henderson Funds with better marketplace alternatives, like those listed above, all of which were available to Defendants.

## II. PLAINTIFFS LACKED KNOWLEDGE OF DEFENDANTS' CONDUCT AND PRUDENT ALTERNATIVES

67.    Until shortly before this suit was filed, Plaintiffs did not know all of the material facts (including, among other things, the investment menus of similarly sized plans, the investment menu choices of similarly sized plan fiduciaries, the costs of the Plan's investments compared to those in similarly sized plans, and the availability of superior investments) necessary to understand Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA. Further, Plaintiffs did not have actual knowledge of the specifics of Defendants' decision-making processes with respect to the Plan (including Defendants' processes for selecting, monitoring, evaluating, and removing Plan investments) because this information is solely within the possession of Defendants prior to discovery. For purposes of this Complaint, Plaintiffs have drawn reasonable inferences regarding these processes based upon (among other things) the facts set forth above.

## CLASS ACTION ALLEGATIONS

68.    Plaintiffs seek certification of this action as a class action under Federal Rule of Civil Procedure 23 and ERISA's derivative action provisions, 29 U.S.C. § 1109 and 1132(a)(2).

69.    Plaintiffs assert their claims on behalf of a class of participants and beneficiaries of the Plan defined as follows:[21]

---

[21] Plaintiffs reserve the right to propose other or additional classes or subclasses in their motion for class certification or subsequent pleadings in this action.

> All participants and beneficiaries of the Janus 401(k) and Employee Stock Ownership Plan that were invested in the Janus Henderson Funds at any time on or after September 9, 2016, excluding any persons with responsibility for the Plan's administrative functions or investments.

70.    Numerosity:    The Class is so numerous that joinder of all Class members is impracticable. The Plan had between 1,700 and 1,900 participants at all relevant times during the applicable period, many of whom were invested in the Janus Henderson Funds.

71.    Typicality:    Plaintiffs' claims are typical of the Class members' claims. Like other Class members, Plaintiffs are Plan participants and suffered financial harm because of Defendants' mismanagement of the Plan. Defendants treated Plaintiffs consistently with other Class members with regard to the Plan. Defendants' imprudent and disloyal decisions affected all Plan participants similarly.

72.    Adequacy:    Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests are aligned with the Class that they seek to represent, and Plaintiffs have retained counsel experienced in complex class-action litigation, including ERISA litigation. Plaintiffs do not have any conflicts of interest with any Class members that would impair or impede their ability to represent such Class members.

73.    Commonality: Common legal and factual questions exist as to all Class members and predominate over any questions solely affecting individual Class members, including but not limited to:

a.    Whether Defendants are fiduciaries with respect to the Plan;

b.    Whether Defendants breached their fiduciary duties by engaging in the conduct described herein;

c.    Whether Janus Henderson breached its duty to monitor other Plan fiduciaries;

29

d. The proper form of equitable and injunctive relief; and

e. The proper measure of monetary relief.

74. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(1)(A) because prosecuting separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.

75. Class certification is also appropriate under Federal Rule of Civil Procedure 23(b)(1)(B) because adjudications with respect to individual Class members, as a practical matter, would be dispositive of the interests of the other persons not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Any award of prospective equitable relief by the Court would be dispositive of non-party participants' interests. The accounting and restoration of the Plan's property that would be required under 29 U.S.C. §§ 1109 and 1132 would be similarly dispositive of the interests of other Plan participants.

76. Class certification is also appropriate under Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class members and a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct as described in this Complaint applied uniformly to all members of the Class. Class members do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claims is relatively small compared to the expense and burden of individual prosecution, and Plaintiffs are unaware of any similar claims brought against Defendants by any Class members on an individual basis. Class certification also will remove the need for unduly duplicative litigation

30

that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

## COUNT I
### Breach of Duties of Loyalty and Prudence (against Defendants)
### 29 U.S.C. § 1104(a)(1)(A)–(B)

77.    As alleged above, Defendants are fiduciaries with respect to the Plan and are subject to ERISA's fiduciary duties.

78.    29 U.S.C. § 1104 imposes fiduciary duties of loyalty and prudence upon Defendants in connection with their administration of the Plan and their selection and monitoring of the Plan's investments.

79.    Defendants breached these fiduciary duties by engaging in the conduct described herein. Among other things, Defendants failed to employ a prudent and loyal process for selecting, monitoring, and reviewing the Janus Henderson Funds, and gave an improper and unjustified preference to these funds over superior, less expensive investments that were available.

80.    Instead of acting in Plan participants' best interest, Defendants' conduct was propelled by a desire to drive revenues and profits to Janus Henderson, and to promote Janus Henderson's business interests. Accordingly, Defendants failed to discharge their duties with respect to the Plan solely in the interest of Plan participants and beneficiaries, and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plan, in violation of their fiduciary duty of loyalty under 29 U.S.C. § 1104(a)(1)(A).

81.    Further, each of the actions and omissions described in paragraphs 79-80 above and elsewhere in this Complaint show that Defendants failed to discharge their duties with respect to the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would have used in the conduct of an enterprise of like character and with like aims, in violation of 29 U.S.C. § 1104(a)(1)(B).

82.    Because of Defendants' fiduciary breaches, the Plan and its participants suffered millions of dollars in losses throughout the putative class period. Defendants are liable, under 29 U.S.C. §§ 1109 and 1132, to make good to the Plan all losses resulting from these fiduciary breaches, and to restore to the Plan any profits that Defendants captured through the use of Plan assets or that resulted from such fiduciary breaches. In addition, Defendants are liable for additional equitable relief and other relief as provided by ERISA and applicable law.

## COUNT II
### Failure to Monitor Fiduciaries (against Janus Henderson)

83.    As alleged throughout the Complaint, Janus Henderson is a fiduciary of the Plan under 29 U.S.C. § 1002(21)(A). Because it has overall oversight responsibility for the Plan and the specific responsibility to appoint and remove members of the Committee, Janus Henderson has a fiduciary responsibility to monitor the performance of the Committee and its members and to ensure that they are complying with the terms of the Plan and ERISA's statutory standards. *See* 29 C.F.R. § 2509.75-8 (FR-17); *In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d at 1231.

84.    A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment of plan assets, and must

take prompt and effective action to protect the plan and participants when the monitored fiduciaries are not meeting their fiduciary obligations.

85.     Janus Henderson breached its fiduciary monitoring duties by, among other things:

a.  Failing to monitor and evaluate the performance of the Committee or have a system in place for doing so, standing idly by as the Plan suffered significant losses as a result of the Committee's imprudent actions and omissions with respect to the Plan;

b.  Failing to monitor the Committee's fiduciary processes, which would have alerted a prudent fiduciary to the breaches of fiduciary duties described herein; and

c.  Failing to remove Committee members whose performance was inadequate in that they continued to maintain imprudent, excessively costly, and poorly performing proprietary investments within the Plan, all to the detriment of the Plan and Plan participants' retirement savings.

86.     Because of Janus Henderson's breach of the duty to monitor, the Plan suffered millions of dollars of losses due to excessive fees and investment underperformance.

87.     Under 29 U.S.C. §§ 1109(a), 1132(a)(2), and 1132(a)(3), Janus Henderson is liable to restore to the Plan all losses suffered as a result of its failure to properly monitor the Committee, and to restore to the Plan any profits that it captured through the use of Plan assets or which resulted from its failure to properly monitor the Committee. In addition, Janus Henderson is liable for additional equitable relief and other relief as provided by ERISA and applicable law.

33

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Schissler, Sissel, and Hittson individually and as a representatives of the Class defined above, and on behalf of the Plan, requests the following relief:

A.   A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative, Rule 23(b)(3) of the Federal Rules of Civil Procedure;

B.   Designation of Plaintiffs as Class Representatives and designation of Plaintiffs' counsel as Class Counsel;

C.   A declaration that Defendants breached their fiduciary duties under ERISA;

D.   An order compelling Defendants to personally make good to the Plan all losses that the Plan incurred as a result of the breaches of fiduciary duties described herein, and to restore the Plan to the position it would have been in but for this unlawful conduct;

E.   An accounting for profits earned by Janus Henderson, and a subsequent order requiring Janus Henderson to disgorge all profits received from, or in respect of, the Plan;

F.   An order granting equitable restitution and other appropriate equitable monetary relief against Defendants including, but not limited to, imposition of a constructive trust on all assets of the Plan transferred to Janus Henderson as a result of Defendants' unlawful conduct in violation of ERISA, or a surcharge against Janus Henderson to prevent unjust enrichment from unlawful conduct involving the Plan;

G.   An order enjoining Defendants from any further violations of ERISA;

H.   An order requiring replacement or removal of certain investments in the Plan;

I.   An order requiring removal of the Plan's fiduciaries and replacement with an independent fiduciary;

J.   Other equitable relief to redress Defendants' illegal practices and to enforce ERISA as may be appropriate;

K.   An award of pre-judgment interest;

34

L.    An award of attorneys' fees and costs under 29 U.S.C. § 1132(g) and/or the common fund doctrine; and

M.    An award of such other and further relief as the Court deems equitable and just.

Dated: January 10, 2023                     **NICHOLS KASTER, PLLP**

                                            By: s/ Paul J. Lukas
                                            Paul J. Lukas, MN Bar No. 22084X
                                            Brock J. Specht, MN Bar No. 0388343
                                            Grace I. Chanin, MN Bar No. 0399969
                                            4700 IDS Center
                                            80 S 8th Street
                                            Minneapolis, MN 55402
                                            Telephone: 612-256-3200
                                            Facsimile: 612-338-4878
                                            lukas@nka.com
                                            bspecht@nka.com
                                            gchanin@nka.com

                                            *Attorneys for Plaintiffs*